UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AGRIGENETICS, INC. d/b/a MYCOGEN SEEDS, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:08-cv-802-TWP-TAB |
| PIONEER HI-BRED INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | | |

**ORDER ON MOTIONS TO EXCLUDE EXPERTS**

**I.   Introduction**

In 1995, Plaintiff Agrigenetics, Inc. (doing business and referred to here as Mycogen) and Defendant Pioneer Hi-Bred International, Inc. agreed to jointly develop seed corn genetically modified to thwart insects, mites, and nematodes. Part of that agreement gave Pioneer the right to sell its own seed corn bearing the developed trait royalty-free under certain conditions. Mycogen claims that Pioneer violated those conditions by selling the trait-bearing seed corn in the wrong kind of bags.

The parties have mustered experts to testify about whether Pioneer's bags violate the agreement, and, if so, how much Pioneer should have to pay. As trial approaches, each side has turned its parasite-eliminating expertise toward eradicating the other side's experts. Mycogen targets Pioneer's experts Dr. Walter Thurman, Dr. Kevin Keller, and Dr. Joanna Seddon. [Docket Nos. 88, 91], and Pioneer returns fire at Dr. Jennifer Vanderhart. [Docket No. 93.] For the reasons given below, all three motions are denied.

**II. Discussion**

Trial courts are the gatekeepers of expert testimony, which is governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The parties' arguments to exclude expert reports on damages and marketing center on the experts' qualifications, methods, and application of those methods to the facts.

*A.    Damages experts*

Two of the pending motions seek to exclude expert testimony regarding damages. Mycogen argues that Pioneer's expert, Dr. Thurman, is unqualified and uses an improper lost profits methodology to calculate damages. Pioneer responds that Thurman's testimony is appropriate, but that Mycogen's expert, Dr. Vanderhart, improperly calculates damages using the reasonable royalty method and must therefore be excluded.

Resolving these motions requires the Court to consider the proper measure of damages in this case—a contract action focused on whether Pioneer breached the parties' collaboration agreement. [Docket No. 1 at 5.] As a leading contracts treatise explains, "The fundamental principle that underlies the availability of contract damages is that of compensation." 24 Richard A. Lord, *Williston on Contracts* § 64:1 (4th ed. 2001). Ordinarily, proper compensation is measured by awarding expectation damages that will place the aggrieved party in as good a position as it would have occupied had the contract been performed. *Id.* § 64.2. Pioneer

advocates for this standard, stressing that Mycogen sued for breach of contract, and the reasonable royalty standard is used in patent infringement cases.

But expectation damages are not the sole remedy for breach of contract. Occasionally, the aggrieved party's interest is protected by an award of restitution damages, "measured by determining the reasonable value of the benefits conferred upon and received by the defendant, rather than by the detriment undergone by the plaintiff in reliance on the contract or the losses sustained by the plaintiff." *Id.* It is on this theory that Mycogen's reasonable royalty approach is based. The fact that the reasonable royalty approach is also used in the patent infringement context does not prevent its application in a breach of contract action. *Compare Williston* § 64.2, *with* 7-20 Donald S. Chisum, *Chisum on Patents* §§ 20.01, 20.03 (2010) ("The appropriate measure of compensatory damages [for patent infringement] may be (1) lost profits, (2) an established royalty, or (3) a reasonable royalty, depending on the circumstances of the case."); *see also* Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 11:52 (2010–11 ed.) (explaining how the statute governing patent infringement damages,"when applied to a license context, suggests a potential overlap with the contract concept that breach of contract entitles the injured party to recovery for the loss of expected benefits from the license"). So both lost profits and reasonable royalty damages are within the realm of possibilities for this case.

At this point, however, the Court cannot select the proper measure of damages because it is unclear whether Mycogen has enough evidence to establish lost profits. Such evidence is critical to determine the appropriate framework for recovery. *See Williston* § 64:2 (explaining that restitution is often used when "for one reason or another the plaintiff cannot establish his or her expectation interest, as where it is too uncertain for recovery under accepted damage

3

principles"). But even if it is too early to adopt a measure of damages, the Court can resolve the parties' specific objections to Thurman's and Vanderhart's testimony.

        1.      Dr. Walter Thurman

Mycogen first contends that Thurman is unqualified to opine on damages. [Docket No. 89 at 1.] Thurman is a William Neal Reynolds Professor of Agricultural and Resource Economics at North Carolina State University. [Docket No. 112-1 at 3.] Thurman researches and teaches "agricultural markets and econometrics," and has written on "the use of contracts in agriculture, the structure of agricultural markets, and the determinants of demand and prices in grain and other commodity markets." [*Id.*] Thurman has also consulted in antitrust and intellectual property litigation and has testified as an economic expert on damages in a wide variety of agricultural contexts.

Despite Thurman's experience, Mycogen argues that he is unqualified because this is his "first consulting activity that implicates licenses to intellectual property." [Docket No. 89 at 5.] Pioneer responds that Thurman's experience and training qualify him to evaluate damages in this case, which "is for simple contract damages" and "is not meaningfully different in economic terms from any other claim for compensation for use of a right, damages for breach of contract, or other claim for royalties in an agricultural context." [Docket No. 112 at 7–8.]

Lack of previous experience with a type of evaluation does not necessarily render an expert unqualified. *Compare IGF Ins. Co. v. Cont'l Cas. Co.*, No. 1:01-cv-799-RLY-KPF, 2009 WL 3415139, at *3 (S.D. Ind. Oct. 19, 2009) ("The fact [that the expert] lacks experience valuing the specific type of agreements at issue and has never valued a book of insurance business . . . does not render his opinion inadmissible; rather, such an objection goes to the

4

weight and credibility of his testimony."), *with MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2009 WL 1916728, at *3 (S.D. Ind. June 29, 2009) ("Although [the expert's] experience is impressive and he arguably could bring 'relevant expertise enabling him to offer responsible opinion testimony helpful' to the jury, in the face of his statements that he lacks expertise and experience in the area of valuing closely held businesses, we cannot conclude with any confidence that he qualifies as an expert in that area under *Daubert*.") (internal citation omitted). In this case, Thurman's experience evaluating damages in the context of lumber, tobacco, honey, poultry, paper, and peanut markets shows that he is qualified to opine on the economics of seed corn—even if he has never calculated damages involving a licensing agreement.

Mycogen's other objections relate to Thurman's methodology and reasoning. Mycogen first objects that Thurman used a lost profits methodology instead of calculating a reasonable royalty. [Docket No. 89 at 7.] But as discussed above, the reasonable royalty approach is not the only possible measure of damages in this case, and even if it were, Thurman's report addresses it in addition to the lost profits method.

Mycogen next objects that Thurman's calculations fail to consider relevant facts, such as what Pioneer could have charged regional seed companies and Mycogen's established royalties. The relevance of these facts, however, is highly disputed by Pioneer, and is commonly disputed in cases applying the reasonable royalty methodology. *See Monsanto Co. v. McFarling*, 488 F.3d 973, 979–80 (Fed. Cir. 2007) (explaining why the established royalty would not be a fair measure of damages in that case); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (rejecting suggested established royalty under the facts of the case); *Medtronic*

5

*Sofamor Danek USA, Inc. v. Globus Med. Inc.*, 637 F. Supp. 2d 290, 309–10 (E.D. Pa. 2009) (explaining irrelevance of established royalty to reasonable royalty determination when parties were related). That Thurman's view of these facts differs from Mycogen's is therefore an appropriate subject for cross-examination, not a reason to exclude his opinions.

Finally, Mycogen objects that Thurman's calculations wrongly used 2007–08 as a base period for determining damages because Pioneer's actions before that period affected Mycogen's profits. [Docket No. 89 at 16.] As with Mycogen's previous objection, the parties dispute the facts underlying whether 2007–08 was a clean period, and the subject should be addressed by cross-examination rather than by excluding Thurman's opinions. Mycogen's motion to exclude Dr. Thurman is denied.

2.   Dr. Jennifer Vanderhart

Dr. Vanderhart is Mycogen's damages expert. Although Pioneer does not oppose Vanderhart's qualifications, it argues that her methodology is flawed and will mislead the jury. [Docket No. 94 at 3.]

Pioneer first challenges Vanderhart's reasonable royalty methodology. As discussed above, this method of calculating damages can be appropriate in a breach of contract case. Pioneer's points about Vanderhart's failure to consider a hypothetical negotiation using the analysis set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), are similarly misplaced. *Georgia-Pacific* explains in detail how to determine what royalty the parties would have agreed to in a hypothetical, pre-breach negotiation. This method comes into play only if there is no evidence of lost profits or an established royalty. *See Hanson*, 718 F.2d at 1078; *Medtronic*, 637 F. Supp. 2d at 309. It is therefore unsurprising that

Vanderhart's conclusion—which focuses on Mycogen's established royalty—does not reach the *Georgia-Pacific* hypothetical negotiation factors.

Second, Pioneer objects that Vanderhart's method would leave Pioneer with no profits. But numerous patent infringement cases hold that the reasonable royalty method does not require a profit for the infringer. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1374 (Fed. Cir. 2008); *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Hanson*, 718 F.2d 1075, 1081 (Fed. Cir. 1983).

Third, Pioneer challenges Vanderhart's failure to consider the availability of Pioneer's noninfringing alternatives in determining a reasonable royalty. Pioneer argues that it could have avoided Mycogen's breach of contract claim by selling its seed directly through affiliates or in different bags. Again, however, Pioneer's noninfringing alternatives are relevant to its position in a hypothetical negotiation, which Vanderhart's calculations do not contemplate.

Fourth, Pioneer argues that Vanderhart should not have considered the royalties paid by other parties. Other parties' royalties are relevant to whether Mycogen had an established royalty, and Pioneer may cross-examine Vanderhart about whether the other parties' royalties are a fair measure of what Pioneer should have to pay Mycogen if it breached the contract.

Fifth, Pioneer argues that Vanderhart's calculation is flawed because it includes royalties to Mycogen that Pioneer has already paid to third parties, specifically royalties paid to Monsanto for its Roundup Ready trait. Evidence on this point is not yet fully developed and is subject to a motion to compel filed October 22, 2010. Upon request, the Court can revisit Vanderhart's consideration of Monsanto royalties after resolving the motion to compel.

Finally, Pioneer argues that Vanderhart's calculation of future damages is speculative because Pioneer could be enjoined from making future sales or voluntarily avoid future breaches by ceasing sales or by acquiring equity interests in its marketing partners, making them affiliates covered by the royalty-free license. [Docket No. 94 at 17–18.] Mycogen responds that Pioneer has likely already made its sales for the 2011 growing season, and Pioneer has not yet acquired any of its marketing partners. [Docket No. 121 at 22–23.] Mycogen's expert should be allowed to consider damages for seed already sold. Pioneer may, of course, present evidence that it made no sales for 2011 or that its marketing partners are now affiliates. Pioneer's motion to exclude Dr. Vanderhart is denied.

### B. *Marketing experts*

Mycogen moves to exclude the reports of Pioneer's marketing experts, Drs. Kevin Keller and Joanna Seddon. [Docket No. 91.] Each report provides marketing background and the expert's conclusion about the parties' possible intentions given that background. At the outset, the Court notes that Pioneer's marketing experts may be unnecessary given the Court's recent entry granting Mycogen partial summary judgment. [Docket No. 173.] But in the event that their testimony could prove helpful, and since no party has raised mootness concerns, the Court considers Mycogen's motion.

Mycogen first argues that the "law prevents experts from opining on intent." [Docket No. 92 at 4.] Pioneer responds that its experts offered no such opinions. [Docket No. 110 at 13.] Both positions are incorrect. Pioneer's response misstates the facts: Keller's report explicitly discusses the parties' intent, concluding that "to introduce second brands by co-branding with distributors . . . appears to have been intended to be part of the agreement" and that "the parties

8

appear to have anticipated and intended to allow Pioneer to use second brands." [Docket No. 92-1 at 5, 16.] Mycogen's position misstates the law: expert opinion on intent is not impermissible. The absolute bar on ultimate issue testimony was lifted in 1972 with Federal Rule of Evidence 704, which provides that (except concerning mental state in criminal matters) "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Testimony on ultimate issues must satisfy the other rules of evidence—such as by being helpful to the trier of fact and not wasting time—but it is not per se impermissible, and is often used to explain the meaning of complex documents. Fed. R. Evid. 704 advisory committee's note; 29 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6284 n.22.

In any event, Pioneer's expert reports do not contain impermissible opinions on intent. The cases offered by Mycogen exclude testimony on intent not because the testimony is about intent, but because it is unhelpful or conclusory, or because the expert lacked specialized training or experience and was therefore no more qualified than the jury to give an opinion. [Docket No. 92 at 4–5 (citing cases).] Pioneer's expert reports are different. Neither offers a bald opinion about intent; instead, the reports explain marketing concepts and apply them to the parties' agreement. And unlike the experts in some of Mycogen's cases, Pioneer's experts have experience specific to the branding industry that gives them an understanding well beyond that of the average juror. Pioneer's reports are not excludable on this ground.

Second, Mycogen argues that Pioneer's experts failed to consider key evidence. [Docket No. 92 at 6.] This evidence includes the deposition of Carl Eibl, who negotiated the contract on behalf of Mycogen, and an email from a Pioneer expert about Pioneer's branding culture.

9

Although this evidence does counter the experts' conclusions, it is not so foundational to their opinions as to require striking them. The evidence is better addressed by Mycogen on cross examination.

Third, Mycogen argues that Pioneer's experts are not qualified to opine about the meaning of the contract language because they admitted that some of the language (e.g., "ordinary course of business," "brand name identification") is not used in the marketing field. This does not make the experts unqualified. Pioneer is offering expert testimony because it believes the words have no settled meaning. The experts may opine on the meaning of the words based on their marketing experience to help the jury understand what sophisticated parties may have intended given marketing practices at the time.

Finally, Mycogen argues that the experts' testimony is unhelpful in a case "about a contract and the specific language of that contract." [Docket No. 92 at 11.] As the Court's recent summary judgment entry noted, however, extrinsic evidence may expose a latent ambiguity in contract language. [Docket No. 173 at 16.] Mycogen's motion to exclude Drs. Keller and Seddon is denied.

### III. Conclusion

The parties' experts have proven more resistant to attack than seed corn parasites. The motions to exclude expert reports [Docket Nos. 88, 91, 93] are therefore denied.

Dated: 11/10/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Sundeep K. Addy
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
rob.addy@bartlit-beck.com

Christopher J. Braun
PLEWS SHADLEY RACHER & BRAUN
cbraun@psrb.com

Lindley J. Brenza
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
lindley.brenza@bartlit-beck.com

Shelley M. Jackson
PLEWS SHADLEY RACHER & BRAUN
sjackson@psrb.com

Todd J. Janzen
PLEWS SHADLEY RACHER & BRAUN
tjanzen@psrb.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Deborah Pollack-Milgate
BARNES & THORNBURG
dmilgate@btlaw.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Brian C. Swanson
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
brian.swanson@bartlit-beck.com

Hongsun Yoon
BARNES & THORNBURG LLP
hongsun.yoon@btlaw.com